IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| 2300 SUGAR SWEET REALTY, LLC, §<br>　　　　　Plaintiff　§<br>　§<br>VS.　§<br>　§ Civil Action No. 7:09-cv-00269<br>CAPITAL ONE, NATIONAL ASSOCIATION §<br>AND TOM ELKIN　§<br>　§<br>　　　　　Defendants　§ | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT, APPLICATION FOR INJUNCTIVE RELIEF, AND APPLICATION FOR TEMPORARY RESTRAINING ORDER**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, **2300 SUGAR SWEET REALTY, LLC**, files this, its First Amended Complaint, Application for Injunctive Relief, and Application for Temporary Restraining Order, subject to Plaintiff's motion to remand, and, in support thereof, would respectfully show the Court the following:

## I.  PARTIES

1.　Plaintiff, **2300 SUGAR SWEET REALTY, LLC** (hereinafter referred to as "Sugar Sweet"), is a Limited Liability Company that is organized under the laws of the State of Delaware.

2.　Defendant **CAPITAL ONE, NATIONAL ASSOCIATION** (hereinafter referred to as "Capital One"), is a national banking association organized and chartered under the laws of the United States with its main office in Virginia.

3.　Defendant **TOM ELKIN** is a natural person residing in the State of Texas.

## II.  JURISDICTION

1

4. The Court lacks jurisdiction over this lawsuit under 28 U.S.C. §1332 as a named defendant, Tom Elkin, is a resident of the state of Texas. Defendants have alleged fraudulent joinder as to Plaintiff's claims against Elkin. However, Defendants have not met their burden of showing that Plaintiff has absolutely no possibility of recovery.

### III. CONDITIONS PRECEDENT

5. All conditions precedent have been performed or have occurred.

### IV. FACTS

6. On or about December 28, 2007, Plaintiff executed a Promissory Note in the original principal amount of $5,000,000.00 (the "Note"). Simultaneously with the Note, Plaintiff executed a deed of trust pertaining to the property made the basis of this suit. Plaintiff received value and Defendant Capital One is the proper holder of both the Note and the deed of trust.

7. Immediately following this, Capital One began enforcing the Note in a manner inconsistent with the agreement. For example, Capital One had originally requested a CD of $500.000.00 in connection with the Note. However, Capital One, though various employees (including Tom Elkin), soon waived this provision and never attempted to enforce it; Tom Elkin has full knowledge of this practice and procedure.

8. Furthermore, in early 2009, in an attempt to correct any deficiencies on the Note with the Defendant, Plaintiff entered into negotiations with Defendants Capital One and Tom Elkin. Tom Elkin, knowing that Sugar Sweet was encountering difficulties meeting its burdens, at various times assured Sugar Sweet that the Note would remain in good standing as long as modified payment agreements were met. As a result of these negotiations, the parties agreed on terms and conditions which included minimum

2

payments that were to be made to the associated swap account. Again, these terms and conditions were contrary to the written provisions of the Note and both Tom Elkin and Capital One were fully aware of these modifications and agreements. Sugar Sweet fully relied on these representations and began operating under the modified agreement. This agreement was in place for a period of at least several months with Tom Elkin periodically checking on Sugar Sweet's status and providing assurance that the Note was in good standing.

9. Despite these agreements and history, in a letter dated June 29, 2009, counsel for Defendant Capital One sent Plaintiff a demand for payment of past-due installments under the Note (the "Demand Letter"). The Demand Letter threatened acceleration of the Note unless certain amounts were immediately paid to Capital One. The Demand Letter was entirely unexpected and in direct contradiction with the prior discussions, negotiations, and agreements between the parties.

10. Upon receipt of the Demand Letter, Plaintiff again attempted to correct any problems with Defendant Capital One and the Note. Plaintiff was, again, willing and able to meet the conditions set forth by Capital One. Despite this attempted second round of negotiations, Defendant Capital One proceeded to send Plaintiff a letter dated July 14, 2009, in which it stated that the Note had been accelerated and noticed a foreclosure sale on August 4, 2009 (the "Acceleration Letter"). Defendant Tom Elkin was named as the substitute trustee charged with the responsibility of carrying out the foreclosure sale. Again, the Acceleration Letter came as a complete surprise to Plaintiff and was in contradiction to the prior discussions, negotiations, and agreements entered into among the parties.

11. Negotiations were once again entered into between the parties and, after agreement of terms, the August foreclosure was passed and Plaintiff was given the opportunity to attempt to cure any defects. The parties understood that payments were contingent upon Plaintiff's receipt of insurance proceeds. However, once these funds were received, Defendant Capital One came into possession of the proceeds check and is currently maintaining possession, thereby unfairly preventing Plaintiff from accessing the funds and making any payments to Defendant Capital One.

12. As per the above facts, Plaintiff has a history with Defendants Capital One and Tom Elkin whereby modified terms of the Note were accepted and enforced. Plaintiff has met all such requirements asked of it by Capital One and Tom Elkin and these Defendants knew of these arrangements and never objected. Due to this history, Sugar Sweet has every right to assume that any representations made by the Defendants were valid and in furtherance of their normal relationship. Furthermore, Plaintiff and Defendant had an agreement in place whereby funds received from insurance proceeds would be applied to the Note. As Capital One maintains possession of these funds, any such agreement cannot be carried out.

## V.   COUNT 1 - FRAUD

13. Under Texas law, to establish a claim for fraudulent misrepresentation, the Plaintiff must establish the following: (1) Defendant made a representation to the Plaintiff; (2) the representation was material; (3) the representation was false; (4) when the Defendant made the representation, the Defendant knew it was false or made it recklessly, as a positive assertion, and without knowledge of its truth; (5) the Defendant made the representation with the intent that the Plaintiff act on it; (6) the Plaintiff relied

4

on the representation; and (7) the representation cause the Plaintiff injury.  *See In re FirstMerit Bank*, 52 S.W.3d 749, 758 (Tex. 2001); *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001).

14.    As such, Plaintiff brings causes of action against Defendants Capital One and Tom Elkin for their representations to Sugar Sweet that the Note was in good standing and that Defendants were willing to work with the Plaintiff to keep it as such. Defendants' representations were material in that they assured Plaintiff that the Note was in good standing, there was no threat of acceleration of the Note, and there was no threat of foreclosure whereby Plaintiff would lose its interest in the property. Defendants' representations, statements, and conduct amount to false representations to the Plaintiff and Plaintiff alleges that the Defendants knew of this falsity or did so recklessly and without knowledge of the truth.  As a result of these false representations, and Plaintiff's reliance, Plaintiff faces the possibility of a foreclosure sale and irreparable harm.

15.    At this time, Plaintiff does not request economic damages against Defendant. Plaintiff requests that Defendant be restrained from foreclosing on the property made the basis of this suit and that the agreement be reformed, as equity would require. Under Texas law, the Plaintiff may be entitled to the equitable remedy of reformation where a contract is marred by fraud.  *See Conn v. Hagan*, 55 S.W. 323, 325 (Tex. 1900); *Spellman v. American Univ'l Inv.*, 687 S.W.2d 27, 31 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.).  This is further developed in the cause of action for breach of contract.

5

16.     Plaintiff would also allege that Defendant Tom Elkin is personally liable under this and other causes of action due to the provisions of the Texas Finance Code §31.006. Specifically, Section 31.006(a) states that a disinterested officer or employee of a depository institution may be held personally liable if the damages resulted from gross negligence or willful or intentional misconduct. Tex. Fin. Code §31.006(a). Plaintiff hereby asserts Tom Elkin's personal liability under this cause of action, and the others described herein, as his actions were grossly negligent, or, in the alternative, intentional or willful.

### VI.     COUNT 2 – PARTIAL PERFORMANCE

17.     Defendants raise the defense of Tex. Bus. & Com. Code §26.02. Specifically, that this provision of the statute of frauds requires loan agreements to be in writing and signed by the party against whom it is to be charged against. However, "[u]nder the partial performance equitable exception, an oral agreement that . . . has been partially performed may be enforced if denying enforcement would itself amount to a fraud." *Bank of Texas, N.A. v. Gaubert*, 286 S.W.3d, 546, 554 (Tex. App.—Dallas 2009). Partial performance of a contract that would not otherwise be enforceable under the statute of frauds may be equitably enforced if denial to do so would amount to a virtual fraud. *Carmack v. Beltway Development Company*, 701 S.W.2d 37, 40 (Tex.App.—Dallas, no writ). Said fraud arises when there is strong evidence of an agreement and its terms, the party acting in reliance has suffered substantial detriment for which there is no adequate remedy, and the other party would reap an unearned benefit if permitted to plead the statute. *Exxon Corporation v. Breezevale Limited*, 82 S.W.3d 429, 439 (Tex.App.—Dallas 2002, pet'n den'd)(citing *Carmack v. Beltway Development*

*Company, supra.).* This partial performance must be "unequivocally referable to the agreement and corroborative of the fact that a contract actually was made." *Exxon Corporation v. Breezevale Limited*, at 439 (citing *Wiley v. Bertelsen*, 770 S.W.2d 878, 882 (Tex.App.—Texarkana 1989, no writ)). The acts that the performance is relied upon to take a parol contract out of the statue of frauds must be such as could have been done with no other reason than to fulfill the particular agreement sought to be enforced; otherwise, they do not tend to prove the existence of the parol agreement. *Exxon Corporation v. Breezevale Limited*, at 439-40.

18. *Gaubert* recognizes that this partial performance exception is one applicable to the traditional statute of frauds. *Bank of Texas, N.A. v. Gaubert,* at 553. However, it is also noted that, while no court has specifically held that the traditional statute of frauds exceptions apply to Section 26.02, no court has ever reached that issue due to a lack of fact issues. *Id.*, at 554 – 55. For example, in *Barnett v. Legacy Bank of Texas*, the Court found that Barnett's claim for partial performance could be referable to an associated agreement that required him to perform the same actions he was claiming were attributable to any alleged agreement. 2003 WL 22358578, 7 (Tex.App.—Eastland Oct. 16, 2003, pet denied)(mem. op.). As such, the Court could not unequivocally equate his performance with any alleged promise. *Id.* Furthermore, in *Gaubert*, the Court reached the same decision after noting that the performance could not have been in reliance of any alleged promise. *Bank of Texas, N.A. v. Gaubert*, at 555 – 56.

19. This is not so in the instant case. All parties here have taken clear action to support the promise(s) made to Sugar Sweet. As is such with the fact that Capital One

never fully enforced the original agreement, especially when dealing with the CD requirement. Moreover, Tom Elkin made constant inquiries of Sugar Sweet requesting payments to only the swap account associated with the Note. Sugar Sweet acquiesced in this and performed as agreed; this arrangement proceeded for a period of time prior to Capital One's unexpected demands. As such, Plaintiff has and will establish that its partial performance is in unequivocal reference to the agreement between the parties. Therefore, Plaintiff will establish a right of recovery as a result and ask this Court for a Declaratory Judgment that Capital One did, in fact, agree to carry out the Note in such a modified manner. As above, Plaintiff asserts Texas Finance Code §31.006 as to Tom Elkin's knowledge of the circumstances and personal liability in misleading Sugar Sweet.

### VII. COUNT 3 – BREACH OF CONTRACT

20. Incorporating the facts and information above, Plaintiff would show that (1) an enforceable contract exists between the parties; (2) Plaintiff performed its obligations under the contract and is the proper party to sue for breach; (3) Defendants breached this contact and subsequently caused Plaintiff's injuries and damages; and (4) Plaintiff seeks damages and/or specific performance as a result of the breach. *See Residential Dynamics, LLC v. Loveless*, 186 S.W.3d 192, 198 (Tex.App.—Fort Worth 2006, no pet.)

21. Taking the facts as plead, there can be no doubt that the parties had entered into a valid, enforceable agreement that modified the original Note. This agreement was performed on and the Defendants, though their actions, have caused the Plaintiff damage. Plaintiff asserts Texas Finance Code §31.006 as to Tom Elkin's personal liability for the breach of any such contract.

22. The Plaintiff requests that the Court reform the agreement between the parties and allow its continued performance for at least the duration of this suit, so that the merits may be determined and the status quo may be maintained. Plaintiff is willing and able to continue its modified performance of the agreement. Texas courts have held that, "where these has been a mistake of one party, accompanied by fraud or other inequitable conduct of the remaining party, the instrument may be make to conform to the agreement or transaction entered into, according to the intention of the parties." *First Nat. Bank of Andrews v. Jones*, 635 S.W.2d 950, 953 (Tex.App.—Eastland, writ refused n.r.e)(quoting *Conn v. Hagan*, *supra*.). The *Jones* court goes on to further explain that, where there is such "trickery, artifice, or device" as to permit the admission of parol evidence, said evidence was, therefore, admissible to show the true intent of the parties. *Id.*, at 953. The court ultimately held that, where the evidence established that there was (1) intent, (2) knowledge and agreement upon that intent, and (3) such trickery, artifice, or device, as to undermine said intent, reformation is proper equitable relief. *Id.*

23. The instant case presents a similar situation. Here, there was intent by Sugar Sweet to perform the agreement in a manner inconsistent with the written Note, yet consistent with the modified arrangements entered into and maintained by the parties. Capital One knew of this and, through Tom Elkin, acquiesced and performed in accordance with Sugar Sweet's intent. This course of performance began immediately with the waiver of the CD requirement and continued with Capital One's acceptance of swap account payments, along with Tom Elkin's reassurances to the same. Because of this, Plaintiff is clearly entitled to the equitable remedy of reformation.

## VIII. COUNT 4 – PROMISSORY ESTOPPEL

24. Plaintiff would also allege a cause of action for promissory estoppel. Promissory estoppel will allow enforcement of an unenforceable oral agreement when (1) the Defendant makes a promise that would be expected to lead the Plaintiff to some definite and substantial injury; (2) such injury occurred; and (3) the Court must enforce the promise to avoid the injury. *Bank of Texas, N.A. v. Gaubert*, 286 S.W.3d, at 553. Promissory estoppel precludes a statute of frauds defense . . . where there is reliance on a misrepresentation that the statute has been satisfied. *Barnett v. Legacy Bank of Texas*, 2003 WL 22358578, at 6. Again, *Gaubert* also notes that, while no court has determined what exceptions to Tex. Bus. & Com. Code § 26.02 currently apply, it does not rule out the traditional exceptions to Section 26.01 – again noting that a valid fact question has never appeared before the Court. *Bank of Texas, N.A. v. Gaubert,* at 554 – 55.

25. In the instant case, Plaintiff had every reason to believe that the actions taken by all parties amounted to a valid loan agreement or modification. The actions taken by the Defendants succeeded in allowing Sugar Sweet to believe that the Note was in good standing as under the modified, valid agreement(s). As such, the misrepresentations made by Defendants amount to misrepresentations as to the belief that a valid agreement was in place. Plaintiff again asserts that Tom Elkin is personally liable, per Texas Finance Code §31.006, as his promises and representations were made intentionally, recklessly, or through his gross negligence.

## IX. COUNT 5 – NEGLIGENT MISREPRESENTATION

26. In the alternative, Plaintiff would allege a cause of action for negligent misrepresentation against Defendants. Under Texas law, in order to establish such a claim, the Plaintiff must show that (1) the Defendant made a representation to the Plaintiff in the course of Defendant's business; (2) the Defendant supplied false information for the guidance of others; (3) the Defendant did not exercise reasonable care or competence in obtaining or communicating the information; (4) the Plaintiff justifiably relied on the representation; and (5) the Defendant's negligent misrepresentation proximately caused the Plaintiff's injury. *See Federal Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991). It has also been held that a negligent misrepresentation claim may circumvent the statute of frauds if the premise of the claim is, "although an agreement was never made, the defendant negligently represented that an agreement had been made and the plaintiff reasonably relied on that misrepresentation to its detriment." *Bank of Texas, N.A. v. Gaubert,* at 556 (citing *. Sloane*, 825 S.W.2d, at 442).

27. In *Sloane*, it was found that a bank could be held liable for negligent misrepresentation in dealing with an alleged loan agreement. *Sloane*, 825 S.W.2d at 442. The Sloanes were informed by a loan officer that there was "no problem" in carrying forth with construction and demolition work pending the outcome of a loan application, leading the Sloanes to believe that an agreement would be in place; ultimately the loan application was denied. *Id*, at 441. While the Court found that Tex. Bus. & Com. Code § 26.01 normally applies to contracts, it was not applicable in this case because the agreement was never reached and, therefore, the statute of frauds was inapplicable. *Id*, at 442.

11

28.     The instant case shares similarities with *Sloane*. For example, Sugar Sweet, for a period of time, was operating under the assumption that a modified agreement was in place between the parties. As it turns out, there was no agreement as discussed with Tom Elkin and Capital One proceeded with foreclosure. Again, it was the Defendants representations that let Sugar Sweet believe that the Note was in good standing. This alternative pleading could, for the reasons found in *Gaubert*, be a potential reason to circumvent the statute of frauds and establish liability on the part of both Capital One and Tom Elkin for their misrepresentations and assertions. Plaintiff asserts Texas Finance Code §31.006 as to Tom Elkin's personal liability in this cause of action as, again, his actions and representations were the result of gross negligence or willful or intentional misconduct.

## X.     DAMAGES

29.      As a result of the Defendants' actions, Plaintiff has been damaged in that:

   1.     It is facing the possibility of foreclosure and loss of its property, necessitating legal action; and

   2.     It has lost the possession and use of proceeds which are currently in the possession of Capital One.

## XI.     REQUEST FOR PRELIMINARY INJUNCTION

30.     Plaintiff seeks to enjoin Defendants, their agents, and representatives from taking any action related to foreclosure on the property made the basis of this suit.

31.     Defendants threaten to and, unless restrained, will sell or cause the Plaintiff's property to be sold. The Plaintiff will suffer irreparable injury unless the foreclosure sale is restrained and enjoined. The foreclosure sale will deprive the Plaintiff of the use and

enjoyment of the property. Additionally, the Plaintiff will lose the right to sell or mortgage the property at a future date and will not obtain the full benefit of the appreciated value.

32. There is no adequate remedy at law as this property is the basis of this lawsuit and preventing its sale was the precipitating factor of its filing. As such, any other remedy would be merely illusory in that the property is the crux of this lawsuit.

33. There is a substantial likelihood that Plaintiff will prevail on the merits because of the actions taken by Defendants to misrepresent Plaintiff's standing as to the Note. Furthermore, Defendants by their actions and course of action as to the Note and all subsequent agreements have established this claim.

34. The harm faced the Plaintiff far outweighs any harm that would be sustained by Defendant Capital One if the preliminary injunction were granted. Capital One will still be the holder in due course of the Note and Deed of Trust on the Property. Furthermore, Plaintiff is ready, willing, and able to make amends for any arrears on the Note.

35. Issuance of a preliminary injunction would not adversely affect the public interest as the status quo will simply be maintained.

36. Plaintiff is willing to post bond in the amount the Court deems appropriate.

37. Plaintiff originally requested an injunction in its pleadings with the State Court. However, that request was not heard prior to removal. As such, Plaintiff asks this Court to set its application for preliminary injunction at the earliest possible time and, after hearing the request, to issue a preliminary injunction against the Defendants.

## XII.   **REQUEST FOR TEMPORARY RESTRAINING ORDER**

38.	In the alternative, Plaintiff asks the Court to grant a temporary restraining order against Defendants.

39.	Defendants threaten to and, unless restrained, will sell or cause the Plaintiff's property to be sold.  The Plaintiff will suffer irreparable injury unless the foreclosure sale is restrained and enjoined.  The foreclosure sale will deprive the Plaintiff of the use and enjoyment of the property.  Additionally, the Plaintiff will lose the right to sell or mortgage the property at a future date and will not obtain the full benefit of the appreciated value.

40.	There is no adequate remedy at law as this property is the basis of this lawsuit and preventing its sale was the precipitating factor of its filing.  As such, any other remedy would be merely illusory in that the property is the crux of this lawsuit.

41.	There is a substantial likelihood that Plaintiff will prevail on the merits because of the actions taken by Defendants to misrepresent Plaintiff's standing as to the Note.  Furthermore, Defendants by their actions and course of action as to the Note and all subsequent agreements have established this claim.

42.	The harm faced the Plaintiff far outweighs any harm that would be sustained by Defendant Capital One if the preliminary injunction were granted.  Capital One will still be the holder in due course of the Note and Deed of Trust on the Property.  Furthermore, Plaintiff is ready, willing, and able to make amends for any arrears on the Note.

43.	Issuance of a temporary restraining order would not adversely affect the public interest as the status quo will simply be maintained.

44.	Plaintiff is willing to post bond in the amount the Court deems appropriate.

45.	For these same reasons, Plaintiff asks this Court to issue a temporary restraining order preventing the Defendants from taking any action as to the foreclosure of the property made the basis of this suit.

### XIII.  PRAYER

For these reasons,  Plaintiff prays that the Court do the following:

1.	After notice and hearing, restrain Defendants from taking any action relating to foreclosure on the property made the basis of this suit;

2.	In the alternative, issue a temporary restraining order restraining any action as to the foreclosure of this same property;

3.	Reform the agreement between the parties and allow for its continued performance, at the minimum until the merits of this suit can be established;

4.	Order Capital One to return possession of Plaintiffs insurance proceed draft and allow for its negotiation;

5.	Enter judgment for Plaintiff;

6.	Award costs of Court;

7.	Grant any other relief it deems appropriate.

                Respectfully submitted,

                JONES, GALLIGAN, KEY & LOZANO, L.L.P.
                Town Center Tower, Suite 300
                2300 West Pike Boulevard (78596)
                Post Office Drawer 1247
                Weslaco, Texas 78599-1247
                Telephone:   (956) 968-5402
                Telecopier:  (956) 969-9402
                E-Mail:       rsalinas@jgkl.com


        By:   /s/ Rudy Salinas, Jr.                       .
                RUDY SALINAS, JR.
                State Bar No.:  24027948
                Federal Bar No.:  27204

ATTORNEYS FOR PLAINTIFF
**2300 SUGAR SWEET REALTY, LLC**

**<u>CERTIFICATE OF SERVICE</u>**

      This is to certify that the above and foregoing instrument has been forwarded to the following parties by U.S. Regular Mail on this, the <u>24th</u> day of November, 2009:

Robert L. Soza, Jr.
Jackson Walker, L.L.P.
112 E. Pecan Street, Suite 2400
San Antonio, Texas 78205

                                        <u>/s/ Rudy Salinas, Jr.            </u>.
                                        RUDY SALINAS